UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| SAMUEL ERRICO, II, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 18-082-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Samuel Errico, II ("Errico" or "the Claimant") and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner.") [Record Nos. 15, 17] Errico argues that the Administrative Law Judge ("ALJ") assigned to his case erred in concluding that he was not disabled within the meaning of the Social Security Act ("Act"). Specifically, he asserts that the ALJ did not properly evaluate his subjective complaints and that the ALJ's decision is not supported by substantial evidence. Errico asks the Court to direct the Commissioner to award him benefits or, in the alternative, to remand this matter to the Commissioner for further consideration. The Commissioner contends that the ALJ properly evaluated the evidence and that the ALJ's decision should be affirmed because it is supported by substantial evidence.

The Commissioner's motion will be granted and the Claimant's motion will be denied for the reasons that follow.

## I. Procedural History

Errico filed an application for Disability Insurance Benefits ("DIB") under Title II of the Act on February 5, 2015. [*See* Administrative Transcript, hereinafter "Tr.," 132.] Errico requested a hearing before an ALJ after the application was denied initially and on reconsideration,. [Tr. 72-86] He appeared before ALJ Dennis Hansen at a administrative hearing in Middlesboro, Kentucky in April 2017. [Tr. 48, 1000-22] ALJ Hansen denied benefits in a written decision issued on July 20, 2017. [Tr. 45-59] The Appeals Council affirmed the ALJ's decision in March 2018. [Tr. 10-14] Accordingly, the Claimant has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. § 405(g).

## II. Background

Errico was forty-five-years-old at the time of his application for benefits. [*See* Tr. 57, 132.] He completed the twelfth grade and worked previously as an electrician and a restaurant cook. [Tr. 202] Errico reported that he was laid-off from his job as an electrical foreman on November 1, 2011, but he also became unable to work on that date due to low back pain that began in 2007. [Tr. 61, 152, 195, 202] He reported in December 2015 that his balance had worsened and he experienced increased pain in his neck, upper back, and legs. [Tr. 213]

Errico reported that he felt sharp pains when he moved the wrong way, and he could not bend, sit, or stand for long periods of time. [Tr. 196-97] He used over-the-counter medications, a heating pad, and stretching to manage the pain. [Tr. 197] He was able to take out the trash, go shopping in short intervals, and take short walks. [Tr. 198] However, he could no longer get in and out of the shower without assistance or hunt and fish like he had done previously. [Tr. 197-98]

Robert Hurford, M.D., performed a decompressive laminoplasty and arthrodesis at L4-L5 to treat Errico's spinal stenosis and leg pain in October 2010. [Tr. 237-38] Errico reported that the back pain was better and he was walking without an assistive device a few weeks after the surgery. [Tr. 233] Physician's assistant Todd Osterbur indicated that strength was normal "in the operative extremity" and that Errico's gait was normal. [Tr. 234] Osterbur directed Errico to begin a physical therapy back rehabilitation program. [Tr. 234]

Errico sought treatment at Mountain Comprehensive Care Center in 2016. [Tr. 266] He reported at that time that he had not seen a doctor since his back surgery in 2010. [Tr. 266] An x-ray of Errico's lumbar spine performed in February 2016 revealed "transitional vertebra and mild compression of the lower thoracic vertebral bodies," a fixation device at L4-L5, and unremarkable lower lumbar vertebral bodies. [Tr. 270] An x-ray of the cervical spine was performed in June 2016, but it was negative. [Tr. 315]

A lumbar MRI in August 2016 showed mild degenerative changes at L1 and L2 with an anterior osteophyte. [Tr. 354] There was a moderate circumferential bulge at L3-L4 with moderate spinal stenosis and moderate circumferential bulge at L4-L5 with marked spinal stenosis. There was no recurrent herniated nucleus pulposis, but there was a moderate broad-based bulge with mild to moderate stenosis at L5-S1. [Tr. 355] The study also showed compromise of the left intervertebral foramina at L4-L5. Nerve conduction velocity studies were performed on both legs in July 2016. [Tr. 381] Sujata Gutti, M.D., diagnosed chronic right L5 radiculopathy, S-1 nerve root involvement, and a "mild sensory type of peripheral neuropathy." [Tr. 381]

Agency consultant Kathleen Monderewicz, M.D., examined the Claimant in March 2015. [Tr. 279] He advised Monderewicz that he did not experience any significant

improvement after his back surgery and that he had developed symptoms down both legs to his ankles. [Tr. 279] He reported that a second back surgery was offered to him, but he declined. [Tr. 279-80] Errico also reported pain in his neck and numbness and tingling in his upper extremities. [Tr. 280]

Monderewicz noted that Errico had a stiff gait, but did not walk with a limp. [Tr. 281] He appeared comfortable in the sitting and supine positions, but displayed signs of discomfort upon lying down and rising from the exam table. Errico could bend forward to 50 degrees and could extend his lumbar spine to 15 degrees. [Record No. 286] There was no tenderness upon palpation of the cervical spine, but there was some audible crepitus during active range of motion, which was slightly decreased [Tr. 283, 285] Errico reported tenderness at the L-3 spinous process and at both sacroiliac joints. The straight leg raise test was positive at 65 degrees on the right and 60 degrees on the left, but Errico was able to stand on one leg at a time without difficulty. [Tr. 283]

While there was no evidence of muscle atrophy, Monderewicz concluded that Errico's lower extremity motor strength was inhibited by low back pain. [Tr. 283] This was particularly notable with respect to right ankle plantar flexion, left knee flexion, and the left extensor hallucis, which were all graded as four out of five. However, sensation and deep tendon reflexes were intact and symmetrical. Errico was able to walk on his heels and toes and could maintain balance while performing tandem gait. He was also able to perform a full squat but used furniture to push back up to a standing position. [Tr. 283]

Monderewicz concluded that "prolonged sitting, standing, and walking, as well as bending, stooping, arising from a squat and heavy lifting and carrying" were limited by Errico's low back pain and leg symptoms. [Tr. 284] She also believed that his use of upper

extremities for overhead reaching and heavy pushing and pulling was limited by his low back pain. She noted that his balance, grip strength, and fine motor manipulation was normal. [Tr. 284]

Consultant Paul Saranga, M.D., reviewed the Claimant's file in January 2016. [Tr. 301-08] Saranga agreed with Monderewicz's opinion in large part, but did not feel that Errico was extremely limited when it came to sitting, standing, and walking. [Tr. 307] He provided the following specific limitations: Errico could occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds; and could sit and stand and/or walk for about six hours in an eight-hour workday. [Tr. 302] He also believed that Errico's ability to push and pull was unlimited and he could frequently climb ramps and stairs. Finally, he opined that Errico could occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds. [Tr. 303]

Errico was hospitalized in February 2017, after he presented to the emergency department complaining of chest pain. [Tr. 779] An echocardiogram revealed pericardial effusion, and a cardiac window was performed to drain the fluid. [Tr. 615] He was also diagnosed with acute pancreatitis and alcohol abuse. [Tr. 575, 775, 835] He returned to the emergency department in March 2017 complaining of chest pain, swelling in his legs, and shortness of breath. [Tr. 837] He was diagnosed with stable acute pericarditis, mild pericardial effusion, and stable chronic pain, and was discharged to home. [Tr. 853-54]

Treating nurse practitioner, Chris Lewis, completed a medical assessment in March 2017. [Tr. 523-25] Lewis opined that Errico could lift only three to five pounds occasionally and that he could sit, stand, and/or walk only three hours in an eight hour day. [Tr. 523] He opined that Errico could never climb, crouch, or crawl, and that he could only occasionally

balance, stoop, or kneel. [Tr. 524] Lewis reported that Errico should avoid heights, moving machinery, temperature extremes, fumes, humidity, and vibration.

ALJ Hansen determined that Errico did not have an impairment or combination of impairments that met a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 52] However, he concluded that Errico had the severe impairments of lumbar degenerative disc disease; cervicalgia; chronic obstructive pulmonary disease with tobacco use; history of incident of pericardial infusion; history of pancreatitis; history of peptic ulcer; and anxiety. [Tr. 50] After considering all of the evidence, the ALJ found that Errico had the residual functional capacity ("RFC") to perform the following:

> light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b), with the opportunity to shift position from sitting to standing and vice versa every 30 minutes; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; can occasionally be exposed to extreme cold, extreme heat, humidity, pulmonary irritants, and vibration; can occasionally reach overhead; can frequently handle, finger, and feel; can never climb ladders, ropes, or scaffolds; can never be exposed to unprotected heights or dangerous moving machinery. Can understand and remember simple instructions; can sustain attention and concentration to complete simple tasks with regular breaks every two hours; can interact as needed with supervisors and coworkers and occasionally with the public; can adapt to routine work conditions and occasional work place changes.

[Tr. 54] Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Errico could perform. [Tr. 58-59] Accordingly, the ALJ concluded that he was not disabled under the Social Security Act.

### III. Standard of Review

A "disability" is defined under the Social Security Act as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental

impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional activity ("RFC") and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work

available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### IV. Discussion

#### A. The ALJ properly evaluated Errico's complaints of pain.

The Claimant contends that ALJ Hansen erred in applying the two-step process for analyzing subjective complaints of pain. Errico's argument, which is unaccompanied by any citation to the record, consists of the following:

> [T]he ALJ failed to properly assess the entirety of the medical evidence including all these additional medical problems which are resulting in additional levels of pain for [the Claimant]. He further has decreased tolerance to perform any type of physical activity including sitting, standing, or walking as well as psychological difficulties which result in more difficulties in performing normal activities from a psychological standpoint. There is new information that is based upon the objective findings from the medical records, including diagnostic testing, as well as the consultive exam. The claimant's own testimony regarding his pain level is uncontradicted in the record.

[Record No. 15-1, p. 14]

Issues raised in a perfunctory manner, without some effort at developed argumentation, generally are deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Additionally, the plaintiff has been cautioned that the Court will not undertake an open-ended review of the administrative record to find support for the Claimant's arguments. [Record No. 12 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)] While relief could be denied based solely on Errico's failure to develop this argument, the Court has reviewed the record and finds that the ALJ applied the required two-step process for evaluating subjective complaints of pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 5180304 (Oct. 25, 2017).

The ALJ first determined that Errico had medically determinable impairments that could reasonably be expected to cause the symptoms he alleged. *See* 20 C.F.R. § 404.1529(b). [Tr. 57] He noted that Errico suffered from low back pain, neck pain, COPD, ulcers, fluid around his heart, and anxiety. [Tr. 54-56] The ALJ concluded, however, that Errico's statements concerning the intensity, persistence, and limiting effects were not substantiated by objective medical evidence or the other evidence of record. *See* 20 C.F.R. § 404.1529(c). [Tr. 57]

Despite his claims of ongoing back problems, Errico did not seek treatment for his low back between 2010 and 2016. [Tr. 55] And although he claimed that he became disabled due to back pain in 2011, he was able to ride an all-terrain vehicle in 2012. [Tr. 57, 272] And while Errico's 2016 MRI revealed lumbar degeneration, he conceded that he was not exercising or following his primary care provider's recommendations regarding weight loss.

The ALJ noted that his 2016 x-ray was normal with respect to Errico's claims of neck pain. [Tr. 55-56] Further, he built model cars and planes as a hobby. [Tr. 55, 1012] Although Errico complained of fatigue and shortness of breath as a result of his heart condition and COPD, the ALJ noted that he had not had substantial treatment for either condition. [Tr. 56]

Further, he continued to smoke, indicating that the conditions did not bother him to the extent he alleged.

Finally, the record provided no support for Errico's allegation of anxiety, aside from a prescription for Buspirone in the primary care notes. [Tr. 57] Despite this, the ALJ gave Errico the benefit of the doubt and deemed anxiety a severe impairment. There is no suggestion that it is not properly accounted for in the RFC, which limits Errico's ability to remember, concentrate, interact with others, and make work adaptations. [*See* Tr. 54.]

The ALJ's credibility determinations are given great weight, particularly since the ALJ is tasked with observing the Claimant's demeanor and credibility. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). Errico has not identified any error in the ALJ's application of the two-step process to his subjective complaints of pain or psychological symptoms. Accordingly, there is no basis to disturb the ALJ's ruling on this ground.

### B. The ALJ's decision is supported by substantial evidence.

Errico contends that consideration of the entire record compels the conclusion that he could not perform even sedentary work. [Record No. 15-1, pp. 9-10] More specifically, he argues that the ALJ failed to properly evaluate evidence that "unequivocally documents" that he suffers from "back lumbar degenerative disc disease, cervicalgia, chronic obstructive pulmonary disease with tobacco abuse, history of incident of pericardial effusion, history of pancreatitis, history of peptic ulcer, [and] anxiety." *Id.* at p. 10. However, the ALJ deemed these conditions to be severe impairments and discussed them in his opinion.

The ALJ adopted Dr. Saranga's finding that Errico could perform light work, but he incorporated many of the limitations assessed by Dr. Monderewicz. Although Monderewicz did not provide specific limitations regarding Errico's ability to remain in the same position,

she believed his back pain would prevent him from doing so for prolonged periods of time. Accordingly, the ALJ implemented the condition that Errico be able to shift position every thirty minutes. [Tr. 54] And despite the opinion of consultant Ed Ross, Ph.D., who believed that Errico had no medically determinable psychiatric impairment [Tr. 287-99], the ALJ credited Errico's claims of anxiety and imposed restrictions on remembering, concentrating, interacting with others, and adapting to workplace changes. [Tr. 54]

Errico claims that the ALJ "completely disregarded" the opinion of Chris Lewis, APRN. [Record No. 15-1, pp. 10-11] However, the ALJ discussed Lewis' opinion and assigned it marginal weight because it imposed extreme limitations compared with the very conservative treatment Lewis had provided. [Tr. 56] Additionally, Lewis acknowledged that he completed the opinion form based on Errico's subjective allegations. Lewis, a nurse practitioner, is not an acceptable medical source and, therefore, the ALJ was not required to give his opinion controlling weight or provide "good reasons" for rejecting his opinion. 20 C.F.R. § 404.1513(a)(2); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

Based on the foregoing, the ALJ's decision was supported by substantial evidence.

## V. Conclusion

Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Acting Commissioner of Social Security Nancy A. Berryhill's Motion for Summary Judgment [Record No. 17] is **GRANTED**.

2. Plaintiff Samuel Errico's Motion for Summary Judgment [Record No. 15] is **DENIED**.

3. The administrative decision will be **AFFIRMED** by separate Judgment entered this date.

Dated: November 5, 2018.

Signed By:
*Danny C. Reeves*
United States District Judge